1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:18-cr-00219-DAD-BAM-4

12                    Plaintiff,

13           v.                             ORDER DENYING DEFENDANT NOBLE'S
                                            MOTION FOR MODIFICATION OF
14   MARK RODNEY NOBLE,                      SENTENCE UNDER 18 U.S.C
                                            § 3582(c)(1)(A)
15                    Defendant.
                                            (Doc. Nos. 246, 260)
16

17

18          Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C.

19   § 3582(c)(1)(A) brought on behalf of defendant Mark Rodney Noble.  (Doc. No. 246.)  That

20   motion is based in part on the purported risks allegedly posed to defendant Noble by the ongoing

21   coronavirus ("COVID-19") pandemic.  For the reasons explained below, defendant's motion will

22   be denied.

23                              **BACKGROUND**

24          On September 27, 2018, an indictment was returned charging defendant Noble with two

25   counts:  (1) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951; and (2)

26   interference with commerce by robbery in violation of 18 U.S.C. § 1951.  (Doc. No. 1.)[1]  On

27   _____

28   [1]  Following his initial appearance in this court, defendant Noble was ordered detained as posing a
     danger to the community pursuant to 18 U.S.C. § 3142(e) and (i).  (Doc. Nos. 45, 46.)

                                          1

February 24, 2020, defendant entered a plea of guilty to Count 2 of the indictment pursuant to a plea agreement.  (Doc. Nos. 106, 114.)  On August 24, 2020, the court sentenced defendant to 48 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 36-month term of supervised release.  (Doc. Nos. 220, 223.)  The court also imposed the mandatory $100 special assessment and ordered defendant to make restitution to a victim of his criminal conduct in the amount of $2,000.  (*Id*.)

Defendant is currently serving his sentence at Metropolitan Correctional Center, Chicago ("MCC Chicago") in Chicago, Illinois.  (Doc. Nos. 246 at 3–4; 249 at 9.)  Accounting for the award of good time credits and time served prior to sentencing while detained, defendant Noble has a current projected release date of February 13, 2022.  (Doc. Nos. 249 at 9; 249-1 at 4; 260 at 6.)  Defendant has thus served approximately 30.5 months (64%) of his full custodial sentence.  (*Id.*)

On February 2, 2021, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 246.)  On February 18, 2021, the government filed its opposition to the motion, and on March 19, 2021, defendant filed his reply thereto.  (Doc. Nos. 249, 260.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited

---

Thereafter, on April 29, 2019, the undersigned denied defendant Noble's motion to revoke the detention order and he remained detained pending trial.  (Doc. No. 78.)  Finally, on April 10, 2020, when the spread of COVID-19 had reached its peak at the Lerdo Detention Center where defendant Noble had been detained, the undersigned granted his motion to reconsider his bail status and ordered him released on a $75,000 appearance bond, with a third party custodian and numerous other conditions including confinement to his residence except as pre-approved by his supervising Pretrial Services Officer.  (Doc. Nos. 140, 143, 144.)  On August 24, 2020, defendant Noble was sentenced in this case and ordered to voluntarily surrender into custody on November 18, 2020.  (Doc. No. 220.)  Less than three months after his surrender into custody, defendant Noble filed this motion to vacate and reduce his sentence.  (Doc. No. 246.)

circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2]   If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3]   Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

The applicable policy statement with respect to compassionate release in the U.S.

Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

compelling reasons."  U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash.

2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and

compelling reasons," even though that policy statement was issued before Congress passed the

FSA and authorized defendants to file compassionate release motions).  However, the Ninth

Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy

statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."  *United States v.*

*Aruda*, __F.3d__,  No. 20-10245, 2021 WL 1307884, at \*4 (9th Cir. Apr. 8, 2021).  "In other

words, the Sentencing Commission has not yet issued a policy statement 'applicable' to §

---

intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for
which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director
determines appropriate," assuming "the Attorney General finds that emergency conditions will
materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II,
§ 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered
emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the
national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was
enacted, the Attorney General issued a memo instructing the BOP to "immediately review all
inmates who have COVID-19 risk factors" beginning with those who are housed at facilities
where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of*
*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has
acted on the Attorney General's guidance, including one case in which a sentenced prisoner was
released to home confinement after serving less than half his sentence from a facility that reported
no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*
*Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.
com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*
*COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-
manafort-released-from-prison-amid-covid-19-fears.

[4]  According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C.
§ 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  However, as the Ninth
Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C.
§ 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G.
§ 1B1.13(2)."  *Aruda*, 2021 WL 1307884, at \*2.

1  3582(c)(1)(A) motions filed by a defendant." *Id.*  The Ninth Circuit clarified that "[t]he

2  Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's

3  discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing

4  *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

5          In so holding, the Ninth Circuit joined the five other circuits who have addressed this

6  issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

7  motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

8  defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

9  ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

10 compelling reasons that an imprisoned person might bring before them in motions for

11 compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

12 version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

13 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

14 compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

15 full discretion to define 'extraordinary and compelling' without consulting the policy statement §

16 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

17 statement covering prisoner-initiated applications for compassionate release.  District judges must

18 operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

19 deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In

20 short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

21 is as of now no 'applicable' policy statement governing compassionate-release motions filed by

22 defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

23 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

24 might raise.'") (citation omitted); *United States v. Maumau*, __ F.3d __, 2021 WL 1217855, at

25 *12 (10th Cir. Apr. 1, 2021) ("We therefore agree with the district court that under the second

26 part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a

27 reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy

28 statement, U.S.S.G. § 1B1.13.").

1    In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

2    defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

3    *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

4    has not specifically addressed the question of which party bears the burden in the context of a

5    motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

6    courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States*

7    *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

8    *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

9                                     **ANALYSIS**

10    As district courts have summarized, in analyzing whether a defendant is entitled to

11    compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

12    defendant has satisfied three requirements:

13              First, as a threshold matter, the statute requires defendants to
              exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).
14              Second, a district court may grant compassionate release only if
              "extraordinary and compelling reasons warrant such a reduction"
15              and "that such reduction is consistent with applicable policy
              statements issued by the Sentencing Commission.  *Id*.  Third, the
16              district court must also consider "the factors set forth in Section
              3553(a) to the extent that they are applicable."  *Id*.
17

18    *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v.*

19    *Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020);

20    *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No.

21    16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third

22    factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors

23    set forth in § 3553(a)).

24    **A.      Administrative Exhaustion**

25    In his pending motion, defendant asserts that he exhausted his administrative remedies

26    prior to filing the pending motion for relief under § 3582 because he "requested compassionate

27    release from the warden at MCC [Chicago] and has been totally ignored," and "the [w]arden

28    merely refused to respond to [his] request."  (Doc. No. 246 at 6.)  Specifically, defendant

6

1    represents that "on December 19, 2020, [defendant] submitted a request to Warden Heisner and to

2    his case manager, requesting compassionate release, explaining the reasons for the request, and a

3    release plan, which to date has been ignored."  (*Id.* at 8.)  However, as the government points out

4    in its opposition, defendant did not attach a copy of any such administrative request as an exhibit

5    to his pending motion.  (Doc. No. 249 at 10.)  According to the government, as of February 18,

6    2021—the date of the government's opposition—the BOP had no record of defendant submitting

7    an administrative request for compassionate release or reduction in his sentence to any BOP staff.

8    (*Id.*)

9         In response, defendant has attached a copy of a request for compassionate release that was

10   received by a unit manager at MCC Chicago on February 20, 2021—two days **after** the

11   government filed its opposition to the pending motion—and that was received by the warden at

12   that prison on March 10, 2021.  (Doc. No. 260-1 at 2.)  Defendant also has attached a copy of the

13   warden's response, dated March 12, 2021, which advised defendant that his request had been

14   given careful review and was being denied because he did not qualify for a reduction of his

15   sentence under "section 3, Elderly with Medical Condition," given his current age of 34 years old.

16   (*Id.* at 1.)  Defendant emphasizes that the warden did not address his reasons for seeking

17   compassionate release but rather his request was denied based solely on his age and without any

18   specific explanation as to defendant's risk of harm if he were to contract COVID-19, in light of

19   his history of suffering from asthma.  (*Id.* at 3–4.)  Accordingly, defendant contends that any

20   meaningful appeal of the warden's denial was frustrated and that the administrative exhaustion

21   requirement should therefore be excused in this instance.  (*Id.* at 3–5.)

22        The court declines to decide in this case whether a failure to satisfy the administrative

23   exhaustion requirement can be excused and, if so, under what circumstances.  *See, e.g.*, *United*

24   *States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (finding that

25   administrative exhaustion under § 3582(c)(1)(A) can be excused); *United States v. Meron*, No.

26   2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020) (holding that the exhaustion

27   requirement is jurisdictional and cannot be excused under any circumstances).  Rather, for the

28   reasons explained below, the court finds that defendant Noble has, in any event, not established

7

1   that extraordinary and compelling reasons warrant his compassionate release.[5]  The court also

2   concludes that the requested reduction in defendant's sentence would be inconsistent with

3   consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).  Declining to address

4   whether defendant has satisfied the administrative exhaustion requirement under § 3582(c)(1)(A)

5   or may be relieved of the obligation to do so, the court instead turns to the merits of the pending

6   motion.

7   **B.      Extraordinary and Compelling Reasons**

8           According to the Sentencing Commission's policy statement, "extraordinary and

9   compelling reasons" warranting compassionate release may exist based on a defendant's medical

10  conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

11  § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

12  was included in the policy statement at a time when only the BOP could bring a compassionate

13  release motion, courts have agreed that it may be relied upon by defendants bringing their own

14  motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

15  2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

16          The medical condition of a defendant may warrant the granting of compassionate release

17  by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

18  illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

19  probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

20  n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

21  release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

22  organ disease, and advanced dementia."  *Id.*  In addition to terminal illnesses, a defendant's

23  _____

24  [5]  In cases where the filing of an otherwise meritorious motion for compassionate release precedes
    administrative exhaustion, some courts have stayed compassionate release until 30 days have
    lapsed from the BOP's receipt of the unanswered request.  *See United States v. Krashna*, 465 F.

25  Supp. 3d 988, 991 (N.D. Cal. 2020) (staying compassionate release pending exhaustion); *United
    States v. Reid*, No. 17-cr-00175-CRB-1, 2020 WL 1904598, at *4 (N.D. Cal. Apr. 18, 2020)

26  (same); *United States v. Route*, 458 F. Supp. 3d 1285, 1290 (W.D. Wash. 2020) ("[T]he Court
    finds that a stay best favors the interests of judicial economy in this instance.").  However, no

27  such stay is warranted in this case because the court will deny defendant Noble's motion for
    compassionate release on the merits.

28

debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[6]

/////

---

[6] Here, however, because defendant Noble is only 34 years old (Doc. No. 249 at 18), his age and age-related factors do not play a role in consideration of his pending motion.

9

1      In his motion, defendant argues that extraordinary and compelling reasons warranting

2   reduction of his custodial sentence exist because:  (1) he "has faced a lifelong battle with asthma

3   and faces the likelihood of a bad outcome if he contracts COVID-19," and (2) the BOP has failed

4   to prevent the spread of COVID-19 at MCC Chicago, an overcrowded facility with dormitory

5   style housing, limited supply of bar soap, and irregular distribution of cloth masks.  (Doc. No. 246

6   at 15, 16, 22, 23.)[7]  Defendant's motion focuses on BOP's overall response to the COVID-19

7   pandemic from early Spring 2020, BOP's response to COVID-19 at MCC Chicago, including its

8   testing policy, cleaning/sanitizing practices, and outbreaks that predated defendant Noble's arrival

9   at MCC Chicago.  (*Id.* at 11–24.)  But defendant does not describe his personal experiences in

10  MCC Chicago in this regard.  For example, defendant asserts in conclusory fashion that MCC

11  Chicago provides inadequate healthcare to inmates and that routine healthcare requests are not

12  attended to, but defendant does not represent that he has ever requested healthcare from MCC

13  Chicago or that any such request was ignored by staff at MCC Chicago.  (*Id.* at 24.)  Although

14  defendant states that he "has gone without his inhaler medicine, sometimes for weeks, during the

15  pandemic" (*id.*), defendant does not explain why he has gone without his inhaler, let alone that

16  MCC Chicago was responsible for him not having his inhaler during those times.  Indeed,

17  defendant does not even specify that this happened while he was in custody at MCC Chicago.

18      In its opposition to the pending motion, the government argues that the mere existence of

19  COVID-19 in society or in the correctional institution where defendant Noble is imprisoned is not

20  an extraordinary and compelling reason justifying the granting of the requested relief.  (Doc. No.

21  249 at 17.)  The government also maintains that defendant Noble is receiving treatment for his

22  asthma at MCC Chicago.  (*Id.* at 9–10.)  Although the government does not dispute that defendant

23  _____

24  [7]  The court notes that at his sentencing defendant Noble requested that the court recommend to
    the Bureau of Prisons that he be designated to serve his sentence at a Bureau of Prisons facility as
25  near as possible to his home in Chicago.  The court made the defense requested recommendation
    to the extent it was consistent with security classification and space availability.  (*See* Doc. Nos.
26  222 at 28; 223 at 2.)  The Bureau of Prisons followed the recommendation requested by defendant
    Noble resulting in MCC Chicago becoming his place of imprisonment.  The court also notes that
27  it was fully aware of defendant Noble's reported history of suffering from asthma because he
    argued for a downward departure based upon that condition and the issues that COVID-19 posed
28  in Bureau of Prison's facilities at the time of his sentencing.  (Doc. No. 210 at 1–6.)

1   suffers from asthma, the government points to defendant's BOP medical records, which reflect

2   that defendant's asthma is being treated.  (*Id.* at 9–10; Doc. No. 253–sealed at 1, 4, 10, 33, 48,

3   55.)  The government also emphasizes that defendant has been tested for COVID-19 twice since

4   he arrived at MCC Chicago just a few months ago in December 2020, and both tests returned

5   negative results.  (Doc. Nos. 249 at 10; 253–sealed at 48.)  Moreover, despite defendant's alleged

6   concerns regarding the risks posed to him if he were to contract COVID-19, according to his

7   medical records, defendant was offered the Moderna vaccine on January 21, 2021, and refused to

8   receive it.  (Doc. Nos. 253–sealed at 51; 249 at 10.)  The government acknowledged that

9   defendant has the right not to avail himself of medical treatment, including the vaccine that was

10  offered to him by MCC Chicago.  (Doc. No. 249 at 18.)  But the government notes that several

11  district courts have recognized that an inmate's refusal to get a vaccine when offered the

12  opportunity to do so substantially undermines that inmate's motion for compassionate release

13  where the motion is based on the threat of contracting COVID-19.  (*Id.* at 18–19) (citing cases).

14       In his reply, defendant explains that he refused the Moderna vaccine at that time because

15  MCC Chicago did not provide him with any information about the risks associated with the

16  vaccine, and in particular, how the vaccine would impact his asthma.  (Doc. No. 260 at 1–2.)

17  Defendant explains that he was concerned because some medications triggered asthma attacks

18  when he was a child.  (*Id.*)

19       Here, the court finds that although defendant's history of asthma may increase his risk of

20  suffering severe illness if he were to be infected with COVID-19, he has clearly not shown that

21  MCC Chicago is unable to monitor and adequately treat his asthma.  *See United States v. Ayon-*

22  *Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic

23  conditions that can be managed in prison are not a sufficient basis for compassionate release.")

24  (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-

25  00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions

26  include the adequacy of the care and treatment being provided to the defendant in BOP given his

27  pre-existing conditions and concluding there was no evidence that the circumstances surrounding

28  his health or treatment were extraordinary or compelling.).  Moreover, defendant is an otherwise

1  healthy, young man.  Notably, defendant does not dispute that MCC Chicago is treating his

2  asthma, as reflected in his medical records.  Indeed, defendant has made no showing whatsoever

3  that he is being denied necessary treatment or prescriptions or that necessary treatment of his

4  asthma is being delayed in any way.  *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM,

5  2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to

6  self-care in a BOP facility already overburdened by its COVID-19 response" where defendant

7  could not receive breathing treatments to clear his lungs as required to treat his asthma, despite

8  repeated requests for them); *United States v. Adeyemi*, No. 06-cr-124, 2020 WL 3642478, at *19

9  (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential

10  lag in medication prescription refills of defendant's inhaler might impact his ability to self-

11  manage his mild asthma).  Defendant Noble has not persuasively argued or presented any

12  evidence establishing that the conditions he is currently facing at MCC Chicago render him

13  unable to adequately provide for his self-care.

14      The court also notes that according to BOP's website, as of April 13, 2021, MCC Chicago

15  reported only one inmate and 41 staff members with active positive tests for COVID-19.  *See*

16  Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last

17  visited Apr. 13, 2021).[8]  In addition, BOP's website provides data on the number of staff and

18  inmates that have received "full inoculations" (meaning both doses of a vaccine have been

19  administered), and according to that data, MCC Chicago has 130 staff members and 250 inmates

20  fully inoculated as of April 13, 2021.  (*Id.*)

21      In light of all of the above, the court concludes that although defendant Noble suffers from

22  asthma, a medical condition that may place him at higher risk of becoming seriously ill if he were

23  to be infected by COVID-19, he has not met his burden of demonstrating extraordinary and

24  compelling reasons for compassionate release under § 3582(c)(1)(A).  Therefore, his motion for

25  compassionate release will be denied.

26

27  [8]  The undersigned does not necessarily accept these reported numbers at face value given the
   manner in which the CDC guidelines apparently allow for individuals to be counted as recovered
   from the virus without confirming test results.  However, there is also no evidence before the

28  court contradicting those reported numbers.

1    **C.    Consistency With the § 3553(a) Factors**

2         Finally, even if defendant Noble's motion were supported by a showing of extraordinary

3    and compelling reasons for his compassionate release, the undersigned is not persuaded that the

4    requested reduction in his sentence would be consistent with consideration of the sentencing

5    factors set forth at 18 U.S.C. § 3553(a).[9]  *See Parker*, 461 F. Supp. 3d at 979.

6         Defendant does not address the § 3553(a) sentencing factors at all in his pending motion.

7    In his reply, defendant merely asserts that he is not a threat to public safety, as shown by the court

8    ordering him released to home confinement under Pretrial Services supervision while he awaited

9    his change of plea proceeding and subsequent sentencing.  (Doc. No. 260 at 5–6.)  In addition,

10   defendant asserts that he "not only followed every condition that was placed on him during his

11   home confinement, he [also] managed to be productive and assist his family."  (*Id.* at 6.)

12        In its opposition, the government argues that defendant poses a continuing danger to

13   public safety, as shown by the nature and circumstances of his criminal offense, i.e., his

14   participation in a horrific armed robbery in which victims were tied up and beaten, one assailant

15   died while fleeing police in a high-speed chase, and 105 pounds of marijuana and about $27,000

16   in cash were stolen.  (Doc. No. 249 at 20–21.)  The government also contends that defendant's

17   purported rehabilitation, in the form of his good behavior while on home confinement and during

18   his brief period of confinement at MCC Chicago, is not sufficient to warrant a reduction of his

19   sentence.  (*Id.* at 21.)

20   /////

21

---

22   [9]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court

23   shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24   the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

25   effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of

26   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing

27   Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any

28   victims of the offense.

13

As noted above, defendant is currently serving a 48-month sentence of imprisonment following his entry of a plea of guilty to interference with commerce by robbery in violation of 18 U.S.C. § 1951.  (Doc. Nos. 220, 223.)  With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 25 and his criminal history was I, resulting in an advisory sentencing range calling for a term of imprisonment of between 57 and 71 months.  (Doc. No. 222 at 14, 16, 21.)  The probation officer recommended a low-end of the guideline range sentence of 57 months in BOP custody.  (*Id.* at 25.)  The undersigned relied upon its careful consideration of the § 3553(a) factors in varying downward from the advisory sentencing guideline range and sentenced defendant to a 48-month term of imprisonment.  (Doc. Nos. 220, 223.)  Specifically, in finding a downward variance appropriate in defendant Noble's case the court took into account his work and education history, his lack of prior criminal record, the need to avoid unwarranted sentencing disparity among the various defendants and the fact that he had served 19 ½ months in local confinement the last month of which was served under even more difficult circumstances than usual due to the surge in COVID-19 infections at the Lerdo Detention facility.  The sentence ultimately imposed by the court in light of these circumstances was significantly less than the low-end of the applicable guideline range as calculated in the presentence report.  In short, defendant Noble received what can be fairly characterized as a lenient sentence given the seriousness of his criminal conduct in this case.

Despite the leniency shown to defendant at the time of his sentence, the court agrees with the government that the nature and circumstances of defendant's offense of conviction were quite serious and clearly suggest that defendant poses a danger to the safety of the community.  For his part, defendant rests solely on the facts that the court eventually, in the face of a then raging COVID-19 pandemic that had infiltrated the detention facilities located within this district, had ordered him released on bond prior to his plea and sentencing on various conditions including Pretrial Services supervision with a home confinement condition.  Most importantly, the court fully and carefully considered the § 3553(a) sentencing factors when it imposed defendant's sentence a mere seven months ago in August 2020.  Defendant has failed to show that a reduction

/////

14

1   in his sentence at this time would be consistent with consideration of those factors only seven

2   months later.

3          The court recognizes that defendant has served approximately 64% of his custodial

4   sentence, and that "'[t]he length of the sentence remaining is an additional factor to consider in

5   any compassionate release analysis,' with a longer remaining sentence weighing against granting

6   any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6

7   (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL

8   2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-

9   1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate

10  release, noting, "the Court finds it significant that defendants have served far less than half of

11  their sentences").  Nevertheless, in the court's view, considering that defendant already received a

12  well below-guideline range sentence, a reduction of defendant's 48-month custodial sentence to

13  effectively one of approximately 31 months would not adequately reflect the seriousness of his

14  offense of conviction, promote respect for the law, provide just punishment, or afford adequate

15  deterrence to criminal conduct.[10]  *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020

16  WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C.

17  § 3553(a).

---

18  [10]  In the pending motion, defendant also appears to ask the court to release him on home
19  confinement.  (*See* Doc. No. 246 at 1.)  However, the CARES Act "'authorizes the BOP—not
    courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v.*
20  *Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United*
    *States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020)
21  (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4
22  (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made
    in conjunction with his motion for compassionate release because "the court has no authority to
23  designate the place of confinement" because the "Bureau of Prisons has the statutory authority to
    choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-
24  54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does
    not authorize the court to order defendant's placement in home confinement").  The district court
25  may only impose home detention as a condition of supervised release, rather than as part of a
    sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5 n.6 & *7.  Accordingly, to do
26  as defendant requests, the court would be required to reduce his sentence to one of time served
27  (i.e. approximately 31 months) and modify the conditions of his term of supervised release to
    include approximately 17 months of home confinement.  The court is unwilling to do so for the
28  reasons set forth above.

1    Thus, on balance, the court finds that granting defendant's motion and reducing his

2    sentence to time served would not be consistent with the § 3553(a) sentencing factors.

3                              **CONCLUSION**

4    Because defendant Noble has failed to demonstrate that "extraordinary and compelling"

5    reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such

6    a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C.

7    § 3553(a), his motion for compassionate release (Doc. No. 246) is denied.

8    IT IS SO ORDERED.

9    Dated:   **April 14, 2021**                          _____

10                                                         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28